JjPICKETT, Judge.

FACTS

Laura Boudreaux was injured in the course and scope of her employment with Albertson’s on August 31, 1999. At the time, Boudreaux worked full-time for the Lafayette City Prosecutor’s Office as a paralegal and part-time at Albertson’s as a service deli clerk. She returned to work as a paralegal the day after sustaining the injury at Albertson’s. She has continued to work as a paralegal without interruption and has even been promoted and earned a pay increase with the Lafayette City Prosecutor’s office since the injury.
Albertson’s began paying Boudreaux worker’s compensation benefits immediately after the accident and payed for her medical treatment. Ultimately, Albert-son’s received a letter indicating that Bou-dreaux was cleared for light duty from her treating physician, Dr. John Cobb. They offered her a light duty position, which fell within her restrictions, and she failed to respond. Albertson’s terminated her benefits on January 10, 2000. Boudreaux then filed this disputed claim, seeking a retroactive reinstatement of benefits and payments of certain medical bills.
Following a trial, the worker’s compensation judge found that Boudreaux had been released to return to work, denied her request for reinstatement of benefits, and found she was not entitled to reimbursement for medical treatment received after February 16, 2000. Boudreaux appeals from this judgment.

DISCUSSION

The appellant argues one assignment of error, that the trial court erred in denying the her claim for retroactive indemnity benefits and payment of past medical | ¡¡.expenses. She requests benefits be reinstated from the date of termination and payment be ordered for the medical treatments at issue.
The factual findings of a workers’ compensation judge should not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
There is no question that the appellant was injured in the course and scope of her employment with Albertson’s. She received medical treatment from a general practitioner, Dr. Stewart Begnaud, and physical therapy. She attempted to return to a light duty position at Albertson’s, but was unable to do the work.
The appellant then sought treatment from Dr. Cobb, an orthopedic surgeon. He ordered an MRI, which showed no objective signs of injury. He ordered further physical therapy and medication. He subsequently saw her on November 17, 1999, at which time she complained of continued pain. He suggested an SI joint injection, but had to request authorization from her insurer. He prescribed pain medication and a prescription to help her sleep.
*932 At Albertson’s request, the appellant was seen by Dr. Gregory Gidman that same day, November 17, 1999. Dr. Gid-man’s notes indicate he believed she did have some sort of injury, probably a “lum-bosacral contusion.” He further found that she was magnifying her symptoms. He questioned her inability to perform light duty work at Albertson’s when she was, in fact, performing light duty work as a paralegal.
The appellant was upset with Dr. Gid-man, whom she felt had accused her of lying. She testified that she was so distraught upon leaving his office that she vomited. Because there was blood in the vomit she went to the emergency room at Our Lady of Lourdes Hospital. She was given Pepcid which made her feel better. Her chart reflects she was “quite happy and jovial” at the emergency room.
13After her emergency room visit, she went to her appointment at Dr. Cobb’s office mentioned above. She did not mention the earlier doctor visits to Dr. Gid-man.
Subsequent to her November 17 medical exams, Boudreaux missed several days of work at the City Prosecutor’s Office. When she returned to work after Thanksgiving, she was told she needed to provide a medical excuse for the days missed. She called Dr. Cobb’s office and requested an excuse.
Dr. Cobb’s office sent an excuse to the prosecutor’s office dated December 13, 1999, requesting that she be excused from work for the days missed, and further, releasing her for fight duty work. Light duty work was defined as “Lifting 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be only a negotiable amount, a job is in this category when it involves sitting most of the time with a degree of pushing/pulling of arm and/or leg controls.”
Albertson’s learned that Dr. Cobb had released the appellant to light duty work and, by letter dated December 29, 1999, offered her a position which fit within these restrictions. Boudreaux failed to respond. When she had not responded by January 11, 2000, Albertson’s deemed this to be a refusal of the position and terminated her benefits effective January 10, 2000.
Based on the evidence presented, the workers’ compensation judge found the appellant had been released to return to fight duty work, which she refused, and determined she was not entitled to reinstatement of her benefits. The record clearly supports the findings of the worker’s compensation judge and we find no manifest error in that ruling.
|4We further find no error in the ruling of the worker’s compensation judge denying the payment of certain medical expenses owed to Dr. Kenneth Mack, Dr. Allen Johnston, and Canal Radiology.
When the appellant first met with her attorney, he suggested she see Dr. Mack. Dr. Mack ultimately ordered tests from Canal Radiology. The appellant, who had already chosen Drs. Begnaud and Cobb as her treating physicians, never sought consent for a change of physician from Albertson’s as required by La.R.S. 23:1121, which states, in pertinent part:
B. The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers’ compensation carrier for a

*933
change of treating physician within that same field or specialty.

(Emphasis added.)
This court has held that a claimant is not entitled to treatment by a second orthopedic surgeon of his choice merely because the first orthopedist has released him to go back to work. Wiley v. Kenneth Parker Logging, 97-1247 (La.App. 3 Cir. 3/6/98); 711 So.2d 297. We find no error in the ruling of the workers compensation judge denying payment of medical bills to these doctors.
We further find no error in the ruling of the worker’s compensation judge which denied payment of bills associated with the claimant’s treatment with Dr. Jimmy Cole, a psychologist who began treating the appellant on January 31, 2000, for “rage.” The record does not clearly reflect this treatment was related to the August 31,1999, accident. We do not find, therefore, the finding of the court to be manifestly erroneous.
| BFor the reasons set forth above, we affirm all aspects of the ruling of the worker’s compensation judge. Costs of this appeal are assessed against Laura Bou-dreaux.
AFFIRMED.